THE INHABITANTS OF PARSONSFIELD v. PERKINS.

*Domicil.* One may be considered as " *dwelling and having his home*" in a certain town, though he has no particular house there, as the place of his fixed abode.

THIS was an action upon the *Stat.* 1821. *ch.* 122. *sec.* 22, brought to recover the penalty of sixty dollars for bringing into and leaving in the town of *Parsonsfield* one *Isaac Stanton*, a poor and indigent person, he having no legal settlement in that town, the defendant knowing him to be poor and indigent.

At the trial in the Court below before *Whitman C. J.* it appeared that the pauper removed into *Parsonsfield* with a wife and children in the year 1800 or 1801 ;—that about twelve years ago he removed to *Ossipee*, where he resided a short time, and then returned to *Parsonsfield*. where he resided with his family most of the time until within about six years past ;— that for the last four years his wife had kept house, with her children, in *Parsonsfield* ; except that in the year 1820 she was seven weeks in *Middleton* in *New-Hampshire*, and in the years 1819 and 1820 she was nine months in *Hiram*, and in 1822 was seven weeks in *Brookfield* ;—that about six years ago the pau-per separated from his wife and family, and had not resided with them since, but yet had lived the greatest part of the time in *Parsonsfield*, going from house to house, occasionally working in that and the neighbouring towns at his trade of bricklayer, and receiving his food wherever he worked ;—that he was not out of the town of *Parsonsfield*, except part of one day, from *December* 1820 till the last of *April* 1821 ;—that he had no par-ticular place of residence within *Parsonsfield*, where he kept his clothes, but went from one house to another as he chanced to find food or employment. It also appeared that the wife and some of the children had been twice removed from *Parsons-field* to *Middleton* as paupers, that about four years ago the latter town had supported them as such eight months, after which they voluntarily returned to *Parsonsfield*. But it did not ap-pear that *Stanton* or any of his family had received supplies as paupers from any town within one year prior to the passing of the Act for the settlement and relief of the poor.

Upon this evidence the Judge was of opinion, and so instruct-
ed the jury, that *Stanton* could not be considered as having a
domicil in *Parsonsfield* on the twenty-first of *March* 1821, and
therefore gained no settlement there by virtue of the statute;
to which opinion the defendant filed exceptions.

*Shepley*, in support of the exceptions.

Domicil, or home, is " the habitation in any fixed place, with
" the intention of always staying there." This intention may
be known tacitly, or by express declarations. *Vattel, book* 1,
*ch* 19. *sec.* 218.

The presumption arising from his residence is, that he is
there *animo manendi.* If it sufficiently appear that the intention
of removing was to make a permanent settlement, or for an in-
definite time, the right of domicil is acquired by a residence of
even a few days. *The Bernon,* 1 *Rob.* 102. *The Venus,* 8 *Cranch*
279. A year's residence is not necessary. *Putnam v. Johnson &*
*als.* 10 *Mass.* 500. A mariner making his home in any town for
more than a year, following his profession therefrom, acquired
a settlement in such town. *Abington v. Boston,* 4 *Mass.* 312.
Nor does he lose his domicil by temporary absences for la-
bour. *Lincoln v. Hapgood,* 11 *Mass.* 530. *Granby v Amherst,*
7 *Mass.* 5.

The husband is not only supposed in law to have his home
where his wife and family reside, but if he is actually away
from them he will acquire a settlement by their residence, al-
though he may never be with them while acquiring such settle-
ment. *Hardwick v. Raynham,* 14 *Mass.* 363. Having lived in
*Parsonsfield* for a long time with his family, as his permanent
place of abode, he must have had his *home* in the town, though
he might not have gained a *legal settlement* there. Having once
acquired a home in *Parsonsfield,* he could change his domicil
only by acquiring a new one ; but of such new acquisition there
is no proof. He was a legal voter in the town of *Parsonsfield*
for state and town officers. *Constitution of Maine, Art.* 2. *sec.* 1,
*Stat.* 1821. *ch.* 114. But he must have his home where he was
entitled to vote. *Putnam v. Johnson & als.* 10 *Mass.* 488.

*M'Intire*, for the plaintiffs.

A *fixed* habitation is essential to the idea of domicil. It is not enough for the person to stop, even a long time, for any temporary purpose. If he have no fixed abode, for an undefined period, he is a sojourner, or a wanderer. All persons who abandon their families to public charity, wandering abroad, lodging in outhouses or in the open air, and not rendering a good account of themselves, are deemed in law to be rogues and vagabonds. *Jacob's Law Dict. art. Vagabond. Vagrant.* They have no *home.* *This* is defined to be, one's own *house*, or private dwelling, the place of his constant residence, to which he returns for his refreshment and rest, when not employed in his regular avocations abroad. A man unsettled in any such habitation, is a vagrant.

The legislature cannot be presumed, in this or any other statute, to use terms and language in any other than their usual, natural and common acceptation, or technical meaning. And if the expression " dwells and has his home" is to be thus understood, then the pauper was not within the meaning of the act at the time of its passage. He was then, in every sense of the term, a *vagrant.* If he had a home for one purpose, he had for every purpose. But in what school district in *Parsonsfield* could he have been taxed ? or at what house could a notice or summons be left, as his usual place of abode ? Not where his wife and children dwelt, for he never went there ;—but in the highways, either in *Parsonsfield*, or the adjoining towns, as he happened to stroll.

The residence of his wife and children in *Parsonsfield* afford only *prima facie* evidence of the residence of the husband ; and this presumption arises from what is usually found to be true. But like all other presumptive evidence, this is liable to be controled by positive proof to the contrary ; and such proof is afforded in the present case. For six years past, amid all their removals, he had never been with them, but wandered elsewhere. Nor has the residence or settlement of the wife or children ever been held to give one to the husband. They may derive from him,—but he cannot from them. Their residence can, at most, only be considered as indicative of his, where his is not apparent by other evidence.

The position that a domicil, once acquired, continues till exchanged for a new one, is considered unsound. If it were true, there would be no vagrancy. But *Vattel b.* 1. *sec.* 219. after remarking generally that the children of vagabond parents have no country, observes that the country of the vagabond is also the country of his child, while the vagabond is considered as not having *absolutely abandoned* his natural or original domicil;—thus clearly admitting that he may thus abandon it, without a new acquisition.

But the pauper in this case most clearly evinced his intention of abandoning his *home* in *Parsonsfield*, having left it without any intention of returning, and persisted for six years in the life of a vagrant which he had deliberately chosen. And thus not being settled there by a *fixed* residence at the date of the passage of the act, the defendant incurred its penalties by bringing and leaving him within that town.

Mellen C. J. delivered the opinion of the Court as follows, at the succeeding *August* term in *Oxford.*

If according to legal principles, *Isaac Stanton*, the pauper, is to be considered as having *resided, dwelt* and *had his home* in *Parsonsfield* on the 21st of *March* 1821, then he gained a *settlement* in that town by virtue of the act passed on that day relating to the settlement and support of the poor.—It appears that from 1800 or 1801 to 1817 he lived with his wife and children in *Parsonsfield*, with the exception of a short time during which he resided in another town about the year 1812—that in 1817 he separated from his wife and family and has never had any connection with them since; though he has continued generally to reside in *Parsonsfield;* sometimes employed in his trade of a mason *there* and in adjoining towns; and sometimes idle—as mentioned in the exceptions.—It appears also, that with the exception of nearly a year, the wife and children have lived and kept house in that town. From these facts what is the legal conclusion as to the domicil of the pauper? It is clear that during all the time that he resided in *Parsonsfield* and lived with his family, he in the strictest sense of the words, *dwelt* and *had his home* in that town.—In this situation he was

The Inhabitants of Parsonsfield *v.* Perkins.

in 1817—and *since* that time, he has generally resided *there*, though he has had no particular house in that town as his place of fixed abode. There is no fact in the case tending to shew that he has ever contemplated a residence in any *other* town or has in any manner lost his rights as a townsman, or an elector of State, County or Town officers, so far as *residence* could give or affect such rights. Nor is there any fact by which it appears that he may not return to and live with his family whenever he may incline so to do; or, in a word, that he may not resume his rights as the head of his family and former home at his option.—As he has not become domiciled in any *other* town, and for the other reasons suggested, we are of opinion that his domicil in *Parsonsfield* must be considered as continuing and existing when the act was passed; of course he then gained a legal settlement in that town, and the defendant was not guilty of the violation of any law in bringing the pauper into the town of *Parsonsfield* and leaving him there, as alleged in the writ.—We sustain the exceptions—and the verdict is set aside.

*A new trial may be had in this Court.*